## Case No. 8,414.

### LIVINGSTON et al. v. JONES et al.

[2 Fish. Pat. Cas. 207; 3 Wall. Jr. 330; 18 Leg. Int. 340.] [1]

Circuit Court, W. D. Pennsylvania.   Nov. Term, 1861. [2]

PATENTS—INFRINGEMENT — MEASURE OF DAMAGES —PROFIT—LICENSE FEE—PATENT CONTROVERSIES—AT LAW—IN EQUITY—REMEDIES.

1. The only cases in which the measure of the patentee's damages is the amount of the infringer's profit. are, when the invention is of some new machine, or a new form of any kind of known machine, which, as a distinct species of machine or manufacture. is more valuable. or can be put into market cheaper. so as to supersede or exclude other machines or manufactures of the same genus; and, where the profit of the patentee consists in a complete monopoly of the right to make and vend the new machine or manufacture as a unit, to the exclusion of all competition.
[Cited in Vaughan v. Central Pac. R. Co., Case No. 16,897.]

2. If the inventor's profit consists neither in the exclusive use of the thing invented, nor in the monopoly of making it for others to use. but in having a general use of it by all who are willing to pay him the price of his license, then the nonpayment of the license fee by the infringer is the only wrong done to the patentee.
[Cited in Washington. etc.. Steam Packet Co. v. Sickles, 19 Wall. (86 U. S.) 617; Vaughan v. Central Pac. R. Co., Case No. 16,897.]

3. It is plain that a patentee, whose invention is only valuable because used by all who pay a license fee, has fixed his own measure of compensation, and needs none of the remedies which it is the duty of the chancellor to give for his protection.   An injunction would do him no good; an account is not wanted; and the only remedy to which he is entitled being a judgment for a given sum of money, with interest, a court of law is his proper resort.
[Cited in Vaughan v. Central Pac. R. Co., Case No. 16.897; Brooks v. Miller, 28 Fed. 616.]

4. Although the statute gives original cognizance of patent controversies equally to courts of equity as to courts of law; and consequently, a chancellor may decide a controversy as to infringement without requiring a previous verdict in a court of law, yet it does not follow that all distinctions, as to remedies granted by each tribunal, are to be abolished.
[Cited in Atwood v. Portland Co., 10 Fed. 285.]

5. A court of law .can not issue an injunction, nor a court of equity take jurisdiction to enforce a penalty or merely punitive damages.   Each court will give the remedy peculiar to its own functions.
[Cited in Perry v. Corning, Case No. 11,003.]

6. The machine being a unit, a specific article well known in the market, having peculiar value because of the patentee's discovery or invention, the attempt to arbitrarily divide the profits of the monopoly of the whole machine. among its parts, is without precedent. and receives no countenance from the case of Seymour v. McCormick, 16 How. [57 U. S. 48].
[Disapproved in Ingels v. Mast, Case No. 7.034. Cited in Mulford v. Pearce, Case No. 9,908.]
[See note at end of case.]

[7. Cited in Dole v. Johnson, 50 N. H. 455, to the point that the testimony of experts can be received implicitly only on points of a scientific character, and the persons offered must be really men of science.]

[3] [Appeal from a master's report, the case being thus:

[Till within a few years past most of the door locks used in this country, were imported from England. It was an important object, therefore, to discover or invent some plan by which this article could be made more cheaply and better than the imported, notwithstanding the higher price of labor here.   Such an inventor, who, by bringing his invention into market, could expel the foreign article, would evidently be a public benefactor, the article of door locks being one of immense consumption in this country. This object was in part effected by making the locks of cast iron; but a difficulty in the way of these cheaper productions was found in the fact that door locks had to be made right and left, and a lock made for a right hand door would have to be turned upside down in order to be used on a left hand door, and vice versa.   It became, therefore, a very important object to those who manufactured. and to those who dealt in this article, that this difficulty of right and left hand locks should be somehow obviated, and that every lock might be equally capable of use on right or left hand doors.

---

[1] [Reported by Samuel S. Fisher, Esq., and by John William Wallace. Esq., and here compiled and reprinted by permission.   The syllabus and opinion are from 2 Fish. Pat. Cas. 207, and the statement is from 3 Wall. Jr. 330.]

[2] [Reversed in 1 Wall. (68 U. S.) 155.]

[3] [From 3 Wall. Jr. 330.]

[An American, named Sherwood—under whom the complainants [Laureston R. Livingston, W. B. Copeland, James K. Moorhead, and others], claimed—was the first to invent a mode of effecting this object, and soon succeeded in establishing a manufacture at once cheaper and better than the imported. His patent was for "a new and useful improvement in door locks." There was necessarily in Sherwood's improved locks, a vast deal—much the greater part—of what had previously been in locks, and he claimed, of course, no merit for inventing door locks generally. "What I claim as my invention," is the language of his application for letters, "is making the case of door locks and latches double faced, or so finished that either side may be used for the outside, in order that the same lock may answer for a right or left hand door." After Sherwood had obtained his patent and sold it to the complainants, which he did for $600, the respondents [J. Hervey Jones, Alexander M. Wallingford, and others] conceiving that the invention patented was without originality, undertook to disregard the patent, and, during a term of two years and six days, did disregard it in a reckless and defiant way, as well as upon an extensive scale. And being able to sell for $31 per dozen, locks which it cost but $10.64 to make, their profits were large. The owners of the Sherwood patent (the parties making the present motion) having filed a bill some time since in this court and got a perpetual injunction and reference for account [Case No. 8,413] obtained a final decree for $13,282.92 damages; a sum, which though large, was still much less than what seemed to be shown as the profits of the other side. They now, ......, moved to treble these damages, under the 14th section of the act of July 4, 1836 [5 Stat. 123], an enactment which is in these words: "Whenever, in any action for damages for making, using, or selling the thing whereof the exclusive right is secured by any patent heretofore granted, or by any patent which may hereafter be granted, a verdict shall be rendered for the plaintiff in such action, it shall be in the power of the court to render judgment of any sum above the amount found by such verdict as the actual damages sustained by the plaintiff, not exceeding three times the amount thereof, according to the circumstances of the case, with costs." The question now was, whether, assuming as proved, that the violation had been wilful and gross, the court, in a form of proceeding coming from a bill in equity, could treble the damages under the enactment quoted.

[Messrs. Loomis & Stowe, against the motion.

[The earlier decisions about patents were often characterized by a ruinous severity, but of late they have been modified and even changed; a change which, if not itself found in the case of Seymour v. McCormick, 16 How. [57 U. S.] 480, may be traced to the wisdom exhibited in the resources of the jurist who pronounced the opinion in that case. The object of the patent laws is to promote the prosperity of the many by giving reasonable protection to the inventions of genius. But they have no further objects. The complainants claim in the matter now pending before the court, a sum exceeding $13,000—say $13,000—for two years' use of their discovery; and that this sum shall be trebled by the court sitting here in equity. That is to say, they demand that the defendant shall pay about $40,000, for having participated in their simple discovery; a discovery for which they paid $600. This claim appears rather formidable to men of moderate means and accumulations. It is an amount equal to the acquisitions of many persons during a life of industry, and what would be usually regarded fair success. The collection of such a sum would ruin the defendants. The sum may appear trifling, and the consequences by no means momentous or important to those who can look complacently upon their overgrown fortunes, and calmly and unconcernedly upon the mode of acquisition, however reprehensible, and its consequences to others, however disastrous. It would pay the salary of a judge of the highest judicial tribunal for a term of many years. Such a claim exhibits neither a spirit of fairness nor a sense of justice. It betokens a thirst for acquisition, and an indifference to the mode and means of attainment. The tendency of such claims is to enrich one class of persons and impoverish another; to elevate one class to undeserved wealth, and depress another to unmerited poverty. But the act of congress of July 4, 1836, § 14, plainly refers to cases on the law side of the court. The expressions which it uses, "action for damages," "verdict," "plaintiff," "judgment," point plainly to common law suits, and are inapplicable to a proceeding in equity, which this is. Indeed, this point may be said to have been decided in Sanders v. Logan [Case No. 12,-295], where this court said, "equity can inflict no exemplary or punitive damages as a court of law may;" and suggested to the counsel that where the object sought was neither "account nor injunction," "but only a decree for a certain sum of money as fixed, actual damages"—which is just what is sought by the request to treble the damages—"the party may have a better remedy in a suit at law." But if the court sitting in equity could treble the damages, is this a case for so doing. In other words would it be done at law? Sherwood has not invented locks. He has, at most, invented but one part, or rather, improved one part of them, the face. The specification of Sherwood himself shows that what he claimed was only for making the "cases of locks double faced." In the remaining parts of the locks

—parts quite separable from the rest, and the profits on each one of which, as in Sherwood's case, can be computed separately—he claimed and could claim no right.

[In Seymour v. McCormick [supra] the supreme court decide that it is error to instruct a jury, that as to the measure of damages, the same rule is to govern, whether the patent covers an entire machine, or an improvement on a machine, and because such an instruction was given below, the judgment was reversed. In a part of the opinion they say: "If the measure of damages be the same, whether a patent be for an entire machine, or for some improvement in some part of it, then it follows, that each one who has patented an improvement in any portion of a steam engine, or other complex machine, may recover the whole profits arising from the skill, labor, material and capital employed in making the whole machine, and the unfortunate mechanic may be compelled to pay treble his whole profits to each of a dozen or more several inventors of some small improvement in the engine he has built. By this doctrine, even the smallest part is made equal to the whole, and 'actual damages' to the plaintiff may be converted into an unlimited series of penalties on the defendant." This language is conclusive.

[Mr. Bakewell, in support of the motion.

[Assuming as the proof is, that the infringement of Sherwood's patent has been gross, the question is whether the court, sitting in equity, cannot render a decree for more than the actual damage. It is true, that in Sanders v. Logan [supra] it is said by the court, "that a court of equity can inflict no exemplary or punitive damages as a court of law may." The case was decided, however, on other grounds. As a general proposition, it is correctly stated, that in equity punitive damages are not recoverable; but that the equity jurisdiction of the circuit courts of the United States, in questions arising under the patent laws, is peculiar, and the rules of equity applicable to ordinary cases do not necessarily apply. In equity, damages are not recoverable, excepting as incident to other relief, for the reason that there is an adequate remedy at law, and mere suits for damages, which could be recovered at law, are not sustainable in equity. But in relation to patent cases, the reason does not apply, since the statute expressly gives a concurrent remedy at law and in equity, and where the reason fails, the rule ceases to apply. The act of congress of 24th September, 1789, § 16 [1 Stat. 82], provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate and complete remedy may be had at law;" but this was merely adopting the long established principles of the English court of chancery. If this rule applied to suits under the laws of the United States, granting

to inventors the exclusive right to their inventions, a patentee would be required to establish the validity of, and his legal right to, a patent in a court at law, before he could obtain a decree of a court of chancery to restrain the infringement of his rights. But in the United States, the circuit courts sitting in equity, do not, in patent cases, act as auxiliary to the courts of law, but have, by virtue of the act of congress of 4th July, 1836, original and independent jurisdiction. They will not, therefore, direct an issue of law to test the validity of a patent, but will decide that question and the legal title of the plaintiff, if necessary, in an equity proceeding, as is said in Sickels v. Gloucester Co. [Case No. 12,840].

[In England, a patentee having sustained his patent at law, appeals to the courts of equity to obtain an adequate recompense for the violation of his patent privilege. Hindmarch, p. 305, 306. It cannot be, that in the United States, where the circuit courts have a larger and more complete jurisdiction over this class of cases, that the reverse is the case, and that a party whose patent is infringed has a better remedy in an action at law than he can have in a suit in equity. It is the practice in equity suits for infringement of patents in United States courts, to give the complainant the actual damages he may have sustained by reason of the infringement of his patent, without the verdict of a jury, or the intervention of a court of law, the amount being ascertained by reference to a master, and awarded by decree of the court; and yet, by examining the acts of congress, we find no express provision for the recovery of damages for infringement, otherwise than by suit at law. The 14th section of the act of 4th July, 1836, contains the only provision in relation to the recovery of damages in such cases; it provides, that "such damages may be recovered by action on the case in any court of competent jurisdiction." The 17th section of the same act provides, that "all actions, suits, controversies and cases arising under any law of the United States, granting or confirming to inventors the exclusive right to their inventions or discoveries, shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States, or any district court having the powers and jurisdiction of a circuit court; which courts shall have power, upon a bill in equity filed by any party aggrieved, in any such case, to grant injunctions, according to the course and principles of courts of equity, to prevent the violation of the rights of any inventor, as secured to him by any law of the United States, on such terms and conditions as said courts may deem reasonable." Here the relief granted is an injunction to restrain the further infringement of the plaintiff's rights, and no allusion is made to recovery of damages. The proceedings in equity cases under this act are not regulated by any express provisions, nor is the defence

which the respondent is permitted to set up to the suit, in any way alluded to, either expressly or by reference to the like provisions regulating the action at law. The 15th section of this act provides, that the defendant may plead the general issue, and give the act and any special matter in evidence, of which notice in writing may have been given to the plaintiff or his attorney, thirty days before trial, &c., and throughout the act the proceedings contemplated are evidently adapted to a suit at law. But the decisions of the courts and the practice of the bar have been to accommodate the requirements of the act to equity proceedings, so that it has been held that if the respondent wishes in an equity suit to try the question of originality, he must set out in his answer the names of persons and places by whom and where the invention had been previously used, because the act of congress, as was decided in Orr v. Merril [Case No. 10,591], peremptorily requires notice of these facts in a trial at law or at most written notice must be given to the complainant a sufficient time before the hearing. So in Wyeth v. Stone [Id. 18,107] one of the statutory defences against an action at law was held to be good in equity, although the statute expressly refers to these defences only in reference to an action which may be instituted at law. These instances of the accommodation of equity proceedings to the provisions of the statute, which refer in terms only to actions at law, are cited for the purpose of sustaining the position that, by a like accommodation, the provision of the act of 1836 (section 14), notwithstanding that it speaks of plaintiffs, and verdicts, and judgments, authorizes the court, in the exercise of a sound discretion, to make a decree in favor of a complainant in equity, to an amount exceeding the "actual damage" found by the master's report. It is not necessary to seek in the ordinary proceedings in chancery for any authority for, or example of, such a decree; for neither is it warranted by the principles nor practice of the law, but derives its authority from the statute, and its example from the provisions of the prior patent laws of the United States.

[The idea of compensating the owner of a patent, whose rights have been wantonly invaded, by giving him, in the shape of damages, more than the actual amount of his direct loss from the infringement, is no new feature of the present patent law alone. It is an idea which pervades the whole series of statutes on this subject. The patent act of 1790, § 5 [1 Stat. 111], allowed such damages (it does not say actual damage) as may be awarded by a jury, and the forfeiture to the plaintiff of the thing, &c., unlawfully made or vended. By the act of 1793, § 5 [1 Stat. 322], the defendant forfeited at least three times the sum which the patentee usually charged as a license fee; and in the act of 1800, § 3 [2 Stat. 38], the forfeit was a sum equal to three times the actual damage; thus the law

remained until the present act of 1836 was passed. This power of increasing the damages even to triple the actual amount, is left solely with the court; they certainly will not exercise it in a case at law, unless it is. in their judgment, fair and right, and necessary to fully compensate the plaintiff. There is no legal necessity imposed on the court to increase the damages in a suit at law, which they escape from in a suit in equity, and if it is equitable in the one case, it certainly is in the other. There is nothing in the form of the proceeding which should vary the exercise of a discretionary power like this. It is not as a penalty that this increase of damages is to be regarded, still less as a vindictive proceeding, but as a means of compensation for injuries and losses sustained by the aggrieved party which result from the infringement, and yet are not covered by the amount of profits received by the infringer. Dean v. Mason, 20 How. [61 U. S.] 203, comes near to an authority. That was a bill in equity for infringement of a patent. A decree was entered against the defendant, and it was referred to a master to take an account. The court say: "The rule in such a case is, the amount of profits received by the unlawful use of the machines, as this, in general, is the damage done to the owner of the patent. * * * Generally this is sufficient to protect the rights of the owner; but where the wrong has been done under aggravated circumstances, the court has the power, under the statute, to punish it adequately by an increase of the damages."

[In this suit in chancery the supreme court gives as a reason for restricting the amount awarded by the master to the actual damage, that in such a case the court has the power to increase it. That this is a case where, at law, the damages would be trebled, appear to us obvious. The violation here has been reckless and defiant. But independently of this, the true measure of damage to the patentee is what he could have got from his patent if it had not been infringed: and this again is shown by the profits which the infringers have made. There are cases, indeed, in which it would be unjust to estimate the damage, by reason of infringement, at the entire profit on manufacturing the whole article. The books of Reports give us some such. Thus in Silsby v. Foote, 20 How. [61 U. S.] 392, the patent was for the use in a stove of an inflexible rod, which being acted upon by the changes of temperature in the stove, would regulate the draft. Here was an improvement which was but a slight variation from stoves known and used before. It was not the first regulator stove by any means, the patentee had no monopoly of regulator stoves, or of regulating the heat by a self-acting damper, and he was clearly not entitled to the profits on the whole stove. Seymour v. McCormick, 16 How. [57 U. S.] 489–491, while it decides that the inventor of an improvement in a

particular part of a well known machine, cannot claim the whole profit as the measure of his damages, yet equally asserts that where the invention is on the whole article or machine whereof the patentee has the monopoly of the manufacture and sale, and desires to preserve that monopoly of the article, the rule is to give him the profits arising from the thing as a whole. The exceptions prove the rule. The invention in this case is for a right and left hand lock— not for an improvement in right and left hand locks.. It was a highly important object to those who manufactured and those who dealt in door locks, that every lock might be equally capable of use on right or left hand doors, and Mr. Sherwood was the first to invent a method of effecting this object. In other words, a right and left hand lock was a new thing, and was patented by Sherwood, the patent being now owned by these complainants. The lock is a unit, and the respondents cannot say truly that our patent is only on the case which encloses the works. In the cases in the Reports, where the profit of making the entire article is not allowed as the measure of damage, there is a difference. In the regulator stove, for instance (Silsby v. Foote [supra]), the regulator of the peculiar kind patented is not essential, for another kind of regulator could be substituted, and the stove would still be perfect, and a regulator stove too, without infringing the patent. In a planing machine, where the patented feature is an improved kind of cutter; these cutters might be replaced with others of a different kind and the machine still remain; so of a patent of a peculiar kind of standard for a plow, or cut-off in a steam engine, and other cases, in many of which the patented feature might be removed and the machine still exist as a perfect and operative whole. But in this lock, the right and left or Janus-faced feature is everything; take away the case, and what remains are a few disjecta membra, unless, except when applied to the case. Further, it is not only necessary that the lock should be capable of looking equally well, when turned either side out, having two faces, each equally applicable to the outside, but the works must also be so constructed as to be capable of being used either way.

[If, however, the court sitting in equity had no power of trebling the damages, then surely the rule of Teese v. Huntingdon, 23 How. [64 U. S.] 2, which excludes in actions at law, counsel fees and other items of actual expense and loss caused directly or indirectly by the infringement, will not be applied in equity; and it will be proper to have the case referred back to the master, to ascertain the amount of such expenses and loss of which he has taken no account in his report.] 3

---

3 [From 3 Wall. Jr. 330.]
15 FED.CAS.—43

GRIER, Circuit Justice. An examination of the facts and the principles of Seymour v. McCormick, 16 How. [57 U. S.] 480, relied on by both sides here, and a comparison of its facts with those presented by this case, will be necessary to a correct decision of the present controversy. The patent of the reaping machine of McCormick had expired, but McCormick had obtained a patent for a small addition or improvement to this machine (a raker's seat). The machine with the raker's seat did not, as a whole, constitute a new machine or manufactured article, giving an entire monopoly in the market to the patentee and his licensees. The patentee had not the exclusive right of making or selling the peculiar reaping machine as one invention. He could not supply the market with the machines with or without the addition of the raker's seat. On the contrary, his price for a license to make and use this improvement on the machine was ten dollars. The wrong done McCormick was the non-payment of the license fee, which respondent had previously paid. The court below had instructed the jury that the measure of damages for infringing the patent for this addition or improvement, to a well known machine, should be the profit made on the whole machine. This was decided to be error. The court say that there can not, in the nature of things, be any one rule of damages which will apply to all cases, and the mode of ascertaining the damages must depend upon the peculiar nature of the monopoly granted.

If the inventor's profit consists neither in the exclusive use of the thing invented, nor in the monopoly of making it for others to use, but in having a general use of it by all who are willing to pay him the price of his license, then the non-payment of the license fee by the infringer is the only wrong done to the patentee. The only cases in which the measure of the patentee's damages is the amount of the infringer's profit, are, when the invention is of some new machine, or a new form of any kind of known machine, which, as a distinct species of machine or manufacture, is more valuable, or can be put into market cheaper, so as to supersede or exclude other machines or manufactures of the same genus; and where the profit of the patentee consists in a complete monopoly of the right to make and vend the new machine or manufacture as a unit, and in the exclusion of all competition. In such a case, the only measure of damage in a court of equity is the amount of profits made by the infringer, and it is in such cases that the injured party should seek his remedy in a court of chancery, where he can have a decree for an account, and an injunction to protect his monopoly. But it is plain that a patentee, whose invention is only valuable because used by all who pay a license fee, and who suffers no other wrong than the detention of such

fee, has fixed his own measure of compensation, and needs none of the remedies which it is the duty of the chancellor to give for his protection. An injunction would do him no good; an account is not wanted; and the only remedy to which he is entitled being a judgment for a given sum of money, with interest, a court of law is his proper resort, where also he may recover a penalty to the extent of treble damages, if the judge sees fit to inflict it.

An injunction is never granted vindictively, but only when it is necessary to protect the rights of the complainant. An account can not be required unless where a knowledge of the profits made by the infringer is necessary to a just determination of the controversy.

Although the statute gives original cognizance of patent controversies equally to courts of equity as to courts of law, and consequently, the chancellor may decide a controversy as to infringement without requiring a previous verdict in a court of law, yet it does not follow, that all distinction, as to remedies granted by each tribunal, is to be abolished; a court of law can not issue an injunction, nor a court of equity take jurisdiction to enforce a penalty, or merely punitive damages. Each court will give the remedy peculiar to its own functions. The remedies of a court of chancery are by injunction and account: penalties and vindictive damages can be recovered only in courts of law. The case of Dean v. Mason, 20 How. [61 U. S.] 203, was one where the monopoly of use of a patented machine (a planing machine), in a particular county, had been infringed. It is said in such a case, that "the rule of damages is the amount of profits received by the unlawful use of the machines. as this, in general, is the damage done to the owner of the patent." The court afterward say: "Generally this is sufficient to protect the rights of the owner. But where the wrong has been done under aggravated circumstances, the court has the power, under the statute, to punish it adequately by an increase of the damages." This is no doubt correct as a general proposition. But the question whether a chancellor would interfere to punish parties by assuming the functions of a common law court, and whether the remedies given in a court of chancery should not be such as are peculiar to that jurisdiction, was not before the court.

These remarks as to inflicting penal damages, though a little out of regular order, have been made in answer to an argument of the learned counsel in this case, in which he questions the correctness of our remarks on this subject in the case of Sanders v. Logan [Case No. 12,295].

The great question of the case now recurs: Is this Janus-faced lock a peculiar and distinct machine, introduced into market as a cheaper and better article, than other machines without the peculiar characteristic of the patented one? Does the value of the patent to its owners consist in the close monopoly of the right to make and sell this species of lock as one individual machine? Has it peculiar characteristics which distinguish it from other machines of the same genus, and which give it a peculiar value in market? If so, the complainants have a right to demand that the defendants, who have infringed their exclusive right to make and sell this peculiar machine or manufacture, are justly liable to refund all the net profits made by such infringement. If, on the contrary, the patent is for some addition or improvement on an old and well-known implement, or some separate part or device thereof of small importance compared with the whole—if the license to use the improvement or addition was sold as separate and distinct from the whole machine, the measure of damage would be the price of a license, and not the profit made by the exclusive right to make and sell the whole machine.

The history of this invention, its object and results are fully stated in the case of Livingston v. Jones [Id. 8,413], between these same parties, when the originality of Sherwood's invention was assailed.

The claim of the Sherwood patent was for "making the case of door locks and latches double faced, or so finished that either side may be used for the outside." The arrangements of the internal parts of the lock and devices necessary to such a lock, are set forth in the specification. They were rather complex, and required, in order to change the lock from a right hand to a left hand lock, that it should be opened and some change made in the position and arrangements of the internal parts. For the purpose of the present discussion it is unnecessary to describe these devices. The name "Janus-faced" locks was given to this machine, to distinguish it from others which had not its peculiar qualities. Now, it is evident, that although the patent of Sherwood may be said to be for an improvement in the manufacture of locks, a well-known implement or machine, nevertheless, the lock contrived by him was a new and different species, having certain qualities differing from all other locks; that the Janus-faced lock is a specific article (although of the genus lock), known in the market, having peculiar value; and that the value of the monopoly granted by the patent consisted in the exclusive right to manufacture this peculiar machine without any competition, and have all the profits of such monopoly. The respondents have made large gains by trespassing on the rights of the complainants. The profits they made by this trespass justly belong to the true owner. They have partaken equally with the complainants in the profits of the monopoly granted to them alone, without license and in defiance of their rights. The only measure of the redress to which the

complainants are entitled is an account of the actual profits made by respondents. It has been argued that this is not full measure of compensation for the injury done to complainants, but it is all that can be made matter of account in equity; all that is specifically claimed in the bill, and all that comes properly within the sphere of the remedies administered by a chancellor.

The machine being a unit, a specific article well known in the market, having peculiar value because of the patentee's discovery or invention, the attempt to arbitrarily divide the profits of the monopoly of the whole machine among its parts is without precedent, and receives no countenance from the case of Seymour v. McCormick [supra].

Decree for $13,282.93.

As to the case of Adams v. Jones [Case No. 57], the court said: "The complainants are sole owners of the right to make this improved machine, either with or without the improvement invented by Adams. As equitable owners of their partner's invention, and their claim being for the infringement of their exclusive right to make the machine with or without it, their damages can neither be apportioned nor increased, in consequence of the mistake of a separate suit on the Adams patent. A decree for profits on the whole machine to the partners jointly, will preclude any claim by any one of them for a particular part." The court, therefore, in decreeing $13,282.93 to Livingston & Co., in the first case, render a decree for one cent in the case of Adams v. Jones [supra].

[NOTE. For other cases involving this patent, see note to Livingston v. Jones, Case No. 8,413.

[NOTE. From this decree an appeal was taken by the defendant to the supreme court, which reversed the decree of the circuit court, rendering a decree for the complainant for the nominal sum of $1.00. Mr. Justice Miller delivered the opinion of the court, in which he said: "Sherwood claims that he is the inventor of three distinct parts going to make up his lock, which thus made up answers a certain purpose, namely: a lock capable of being applied indifferently to a door opening from the right or left. Two of these claims have been long since superseded by other improvements, and abandoned by everybody, and have never been used by the defendants. The other claim which they have used is found to be invalid for want of novelty. What is left of the Sherwood patent? It is clear that no part of the patent which is valid has been used by defendants, and they cannot be made infringers by an argument that mingles the valid and invalid parts of a patent, and calls it a unit; and then claims that defendants are infringers because they have used one part of this unit, although it was a part as to which the patent is void. It, therefore, appears that, in point of fact, the defendants have not infringed the Sherwood patent, and if we were unembarrassed by the pleadings, we should dismiss the bill with costs." In the court below the defendants in their answer had admitted that they made locks as described in Sherwood's patent. It is upon this admission alone that the decree is allowed to stand even for the nominal damage. 1 Wall. (68 U. S.) 155.]